IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**,<br><br>v.<br><br>**ROBERT A. LUND**,<br><br>Defendant. | Case No. 3:18-cr-180-SI (LEAD)<br>Case No. 3:19-cr-244-SI<br><br>**OPINION AND ORDER ON DEFENDANT'S MOTIONS TO DISMISS AND FOR BILL OF PARTICULARS** |

Scott Erik Asphaug, Acting United States Attorney, and Seth D. Uram and Meredith D.M. Bateman, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for United States of America.

Noel Grefenson, NOEL GREFENSON PC, 1415 Liberty Street SE, Salem, OR 97302. Of Attorneys for Defendant Robert A. Lund.

**Michael H. Simon, District Judge.**

On April 24, 2018, a federal grand jury in the District of Oregon indicted Robert A. Lund (Mr. Lund) in Case No. 3:18-cr-180-SI (Case '180). The grand jury charged Mr. Lund with one count of filing false statements in a bankruptcy proceeding, in violation of 18 U.S.C. § 152(2). On June 12, 2019, a federal grand jury in the District of Oregon indicted Mr. Lund on additional charges in Case No. 3:19-cr-244-SI (Case '244).[1] In this latter case, the grand jury charged

---

[1] In this Opinion and Order, all citations to dockets entries refer to Case'244.

Mr. Lund with six counts: (1) tax evasion from 1994-1996, in violation of 26 U.S.C. § 7201; (2) failure to file an individual tax return for calendar year 2013, in violation of 26 U.S.C. § 7203; (3) failure to file an individual tax return for calendar year 2014, in violation of 26 U.S.C. § 7203; (4) obstructing or impeding the Internal Revenue Service (IRS), in violation of 26 U.S.C. § 7212(a); (5) theft of government funds relating to the Oregon Health Plan, in violation of 18 U.S.C. § 641; and (6) theft of government funds relating to the Supplemental Nutritional Assistance Program, in violation of 18 U.S.C. § 641. On November 7, 2019, the Court consolidated both cases pursuant to Rule 13 of the Federal Rules of Criminal Procedure. A jury trial is scheduled to begin on August 9, 2021. Pending before the Court are two motions filed by Mr. Lund in Case '244. First, Mr. Lund moves to dismiss Count One (tax evasion). Second, Mr. Lund moves for a bill of particulars relating to Count One (tax evasion) and Count Four (obstructing the IRS). For the reasons stated below, the Court denies both motions.

## DEFENDANT'S MOTION TO DISMISS

Mr. Lund makes two arguments in support of his motion to dismiss. First, he argues that the charged offense falls outside the applicable statute of limitations. Second, he argues that the charge was brought after undue preindictment delay in violation of his rights under the Due Process Clause of the Fifth Amendment of the U.S. Constitution.

**A. Background**

As noted, Count One in Case '244 alleges tax evasion from 1994-1996, in violation of 26 U.S.C. § 7201. Tax evasion is a single crime that can be committed in two distinct manners: (a) the willful attempt to evade or defeat the assessment of a tax; or (b) the willful attempt to evade or defeat the payment of a tax. *United States v. Mal*, 942 F.2d 682, 686-88 (9th Cir. 1991). Here, the government alleges tax evasion in the second way, by evasion-of-payment, not by evasion-of-assessment. The government contends that the IRS properly assessed Mr. Lund for

taxes that he owed for 1994, 1995, and 1996, and that the U.S. Tax Court and the Ninth Circuit upheld these assessments. The government further contends that during the next 15 years, Mr. Lund concealed his assets so the IRS could not use them to satisfy Mr. Lund's tax debt.

Mr. Lund's alleged evasion of payment began with the first step that Mr. Lund allegedly took to conceal his assets from the IRS and did not end (at least for purposes of indictment and statute of limitations) until his last alleged affirmative act to evade taxes in December 2016. As alleged in the indictment, during a 16-year period, Mr. Lund transferred title of his real estate properties to nominee entities and then to family members, to conceal these properties from the IRS. Indictment (ECF 1), ¶ 11(a). The indictment also alleges that Mr. Lund deposited some of his income to the bank accounts of nominee entities to conceal that income from the IRS and used debit cards for these accounts to pay his personal expenses and obtain cash. *Id.*, ¶ 11(b). Count One further alleges that to stop IRS collection activity, Mr. Lund filed bankruptcy cases and made false statements about his assets, *id.*, ¶ 11(c), and sent letters to the IRS in which he made frivolous arguments and threatened to sue IRS personnel. *Id.*, ¶ 11(d). Count One also identifies the taxes that Mr. Lund allegedly evaded and how that amount grew to $1.7 million by the end of 2016. *Id.*, ¶ 12.

According to the government, in November 2014, the Tax Division of the U.S. Department of Justice authorized a grand jury investigation of Mr. Lund, and the criminal investigation of Mr. Lund then began. The principal IRS Special Agent spent approximately 4,600 hours investigating Mr. Lund from the time the investigation began through indictment. The government explains that the criminal investigation took this much time because the Special Agent had to: (1) review the IRS's records of its civil interactions with Mr. Lund; (2) identify and review records relating to 189 entities that Mr. Lund allegedly created and 52

bank accounts that Mr. Lund allegedly opened; (3) interview at least 36 people; (4) work with a cooperating Revenue Agent to reconstruct Mr. Lund's financial life from 2000 to 2016; (5) review Mr. Lund's bankruptcy cases to identify allegedly false statements that Mr. Lund made in those filings; (6) review records relating to Mr. Lund making allegedly false statements on FCC applications for AM radio station licenses; and (7) work with a State of Oregon investigator to put together evidence showing that Mr. Lund had materially understated his income when he applied for and received food stamps and Medicaid coverage.

The government adds that in August 2016, the IRS Special Agent attempted to interview Mr. Lund and the United States Attorney's Office sent Mr. Lund a "target letter," explaining that he was under criminal investigation for tax evasion and other crimes. Thus, Mr. Lund knew at least by August 2016 that the IRS was investigating him criminally. After the Special Agent completed her investigation, she wrote a detailed Special Agent's Report, which was subjected to standard internal review by IRS management and legal counsel. The IRS then sent Mr. Lund's case to the Department of Justice's Tax Division for required review and prosecution authorization. As previously noted, the grand jury indicted Mr. Lund for tax evasion and other charges on June 12, 2019.

## B. Statute of Limitations

An indictment alleging tax evasion in violation of 26 U.S.C. § 7201 is timely so long as it is brought within six years of the last affirmative act of evasion. 26 U.S.C. § 6531(2); *United States v. Carlson*, 235 F.3d 466, 470 (9th Cir. 2000); *United States v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987) (noting that affirmative acts within six years prior to indictment made indictment timely, although taxes evaded were due and payable more than six years before indictment); *United States v. Cramer*, No. 3:17-cr-267-SI, 2019 WL 1048830, at *3 (D. Or. Mar. 5, 2019) (affirmative acts within six years prior to indictment made it timely although taxes

evaded were due and payable more than fifteen years before indictment); *see also United States v. Perry*, 714 F.3d 570, 573 n.2 (8th Cir. 2013) (noting agreement among circuits on application of § 7201's statute of limitations).

An affirmative act of evasion is any act "the likely effect of which would be to mislead or conceal." *Spies v. United States*, 317 U.S. 492, 499 (1943). The government need only show one affirmative act of evasion for a count of tax evasion. *United States v. Thompson*, 518 F.3d 832, 852, 857 (10th Cir. 2008); *United States v. Conley*, 826 F.2d 551, 556 (7th Cir. 1987). Whether a defendant committed affirmative acts of evasion within the six-year period prior to the date of an indictment raises a mixed question of fact and law, and "a valid indictment provides the government with the opportunity to present evidence at trial that the affirmative acts occurred in the time frame that allows for conviction within the applicable statute of limitations as lawfully extended." *United States v. Jensen*, 690 F. Supp. 2d 901, 910 (D. Alaska 2010).

The evasion-of-payment charge alleged in Count One is timely because Mr. Lund allegedly committed several affirmative acts of evasion within six years of June 12, 2019, the date of indictment's return. *See, e.g.*, Indictment (ECF 1), ¶ 11(b) (alleging that from April 2014 until December 2016, Mr. Lund deposited income to, paid personal expenses from, and made cash withdrawals from at least one nominee bank account). Because these affirmative acts occurred within six years of the date of indictment, the charge alleged in Count One is timely.

## C. Due Process

"[S]tatutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide[s] the primary guarantee against bringing overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (citation and internal quotation marks omitted); *see also United States v. Corona-Verbera*, 509 F.3d 1105, 1112 (9th Cir. 2007) ("Generally, any delay between the commission of a crime and an indictment is limited by the

statute of limitations."); *United States v. Moran*, 759 F.2d 777, 782 (9th Cir. 1985) ("[P]rimary protection is afforded to defendants by the applicable statute of limitations.").

Any other restrictions on pre-indictment delay are circumscribed and afford defendants relief only in rare circumstances. *See Lovasco*, 431 U.S. at 789; *see also United States v. Barken*, 412 F.3d 1131, 1134 (9th Cir. 2005) ("An indictment is rarely dismissed because delay by the prosecution rises to the level of a Fifth Amendment due process violation."); *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992) ("The task of establishing the requisite prejudice for a possible due process violation is 'so heavy' that [the Ninth Circuit in 1992] found only two cases since 1975 in which any circuit has upheld a due process claim.").

To succeed on a claim of pre-indictment delay under the Due Process Clause, a defendant "must satisfy both prongs of a two-part test." *Corona-Verbera*, 509 F.3d at 1112. "First, he must prove actual, non-speculative prejudice from the delay." *Id*. (internal quotation marks omitted). "Second, . . . [he] must prove that the delay offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *Id*. (internal quotation marks omitted). At prong two, "the length of the delay is weighed against the reasons for the delay." *Id*. If the defendant does not prove prejudice at prong one, a court "need not examine the reasons for the delay," *Barken*, 412 F.3d at 1136, or "consider whether the delay offends fundamental conceptions of justice." *United States v. Gregory*, 322 F.3d 1157, 1165 (9th Cir. 2003).

If the court finds prejudice and reaches the balancing portion of the test, a defendant has the burden of proving "that the delay was caused by culpable actions of the government." *United States v. Loud Hawk*, 816 F.2d 1323, 1325 (9th Cir. 1987). A defendant must show "an[] intentional or negligent delay for improper purposes by the government." *United States v. Tornabene*, 687 F.2d 312, 317 (9th Cir. 1982). "If mere negligent conduct by [the government] is

asserted," however, then "the delay and/or prejudice suffered by the defendant will have to be greater than in cases where recklessness or intentional governmental conduct is alleged." *Moran*, 759 F.2d at 782.

The Court finds that Mr. Lund has not shown actual prejudice. Prejudice "must be definite and not speculative," and if a "delay resulted from negligence rather than recklessness or intentional government misconduct, [the defendant's] showing of prejudice must be even greater." *Gregory*, 322 F.3d at 1165. Mr. Lund claims prejudice because: (1) his "activities took place almost two decades ago," so "memories have faded"; (2) potential defense witness Thomas Brissey is now deceased; and (3) Mr. Lund's tax liability "continued to accrue interest."

"Generalized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice." *United States v. Manning*, 56 F.3d 1188, 1195 (9th Cir. 1995); *see also United States v. Horowitz*, 756 F.2d 1400, 1406 (9th Cir 1985) ("defendant must prove that the witnesses' memories were impaired by the passage of time . . . [m]ere assertions that . . . witnesses' memories may have faded with the passage of time is not proof of actual prejudice") (internal quotation marks omitted); *United States v. Merkel*, 357 F. Supp. 3d 1060, 1070 (D. Or. 2019) (finding no prejudice when defendant did not identify witnesses whose memories had faded and instead made only general assertions that "memories have faded").

The only loss of a potential witness that Mr. Lund specifically has identified is Thomas Brissey, who is now deceased. Mr. Lund argues that the "sworn assertions in his declaration" contain sufficient information to establish that Thomas Brissey, now deceased, would have been a critical defense witness. ECF 60 at 2.[2] According to Mr. Lund, the government implies that it

---

[2] In his declaration filed well before his motion to dismiss (ECF 45), Mr. Lund stated, in support of his motion for continuance of the trial date:

will introduce evidence at trial that Mr. Lund made a sham transfer of title to Mr. Brissey relating to a mobile home park that Mr. Lund owned. Mr. Lund argues that his recounting for a jury the specifics of his reliance on Mr. Brissey's tax and related real property advice is a poor substitute for testimony to the jury recounting that advice given by Mr. Brissey himself. Mr. Lund, however, has not made a persuasive showing of what specifically Mr. Brissey would have said. "[W]hen a defendant fails to make a specific showing as to what a deceased witness would have said, any argument of prejudice is pure conjecture." *Corona-Verbera*, 509 F.3d at 1113; *see also Manning*, 56 F.3d at 1194 (stating that although potential "key witness" for defense died, there was no prejudice because defendant made no showing regarding "what the deceased witness would have said"). Here, Mr. Lund has failed to show actual prejudice.

Mr. Lund also argues that he has suffered a "unique prejudice" as a result of the government's delay in indicting him for evasion of payment because the tax debt he owes will continue to accrue interest that will be included in any restitution the Court orders if Mr. Lund is convicted. This claim of "unique prejudice" is without merit because Mr. Lund would owe the tax debt even if the IRS had not referred him for criminal investigation and he had not been indicted. *See* 26 U.S.C. § 6601(a).

---

> I have a constitutional right to present my good faith defense at trial and, within reason and as the Court's discretion permits, to introduce competent evidence to support my defense which includes my reliance on information, advice and assistance provided to me by third parties who I believed to be experts on federal tax law and my rights and obligations in respect to that law. These persons include but are not limited to . . . and Mr. Thomas Brissey (deceased).

ECF 45 at 4.

The Court also finds that the delay does not offend fundamental conceptions of justice that lie at the base of our civil and political institutions. Mr. Lund has not shown that the government delayed seeking indictment "solely to gain tactical advantage over the accused." *Lovasco*, 431 U.S. at 795. Pre-indictment delay due to an ongoing investigation cannot constitute a due process violation, even if a defendant's "defense might have been somewhat prejudiced by the lapse of time." *Id*. at 796; *Moran*, 759 F.2d at 783; *Tornabene*, 687 F.2d at 316-17. Prosecutors also have "wide latitude when to seek an indictment." *United States v. Sherlock*, 962 F.2d 1349, 1355 (9th Cir. 1992).

Further, prosecutors "are not under any duty to file charges as soon as probable cause exists, nor even as soon as the Government has assembled sufficient evidence to prove guilt beyond a reasonable doubt." *Moran*, 759 F.2d at 783; *see also Lovasco*, 431 U.S. at 791 ("[t]o impose such a duty 'would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself.'") (quoting *United States v. Ewell*, 383 U.S. 116, 120 (1966)); *see also United States v. Pallan*, 571 F.2d 497, 500 (9th Cir. 1978) (stating that "due process does not prevent the prosecutor from delaying submission to the grand jury in order to acquire additional probative evidence"). Instead, prosecutors may wait until they are "completely satisfied that they should prosecute." *Lovasco*, 431 at 795-96. Accordingly, the mere fact that charges could have been filed sooner does not "offend [] those fundamental conceptions of justice which lie at the base of our civil and political institutions[.]" *Corona-Verbera*, 509 F.3d at 1112 (internal quotation marks omitted).

The prosecuting arm of the Department of Justice is not the IRS and has no control over the civil and administrative functions of the IRS. The Collection Division and the Examination Division of the IRS, with no input from "the government," decided how long and in what manner

to attempt to civilly (*i.e.*, non-criminally) resolve Mr. Lund's tax situation and when to refer Mr. Lund for criminal investigation. In addition, Mr. Lund allegedly took many measures to evade paying his taxes and obstruct the IRS's civil and administrative efforts. Further, Mr. Lund allegedly undertook many evasive and obstructive actions that required a long criminal investigation. *See* ECF 58-1 (Decl. of Seth D. Uram).

For all these reasons, the Court finds that the charge alleged in Count One in Case '244 is timely under the applicable statute of limitations and that Mr. Lund has failed to show a violation of his rights under the Due Process Clause. Accordingly, the Court denies Defendant's Motion to Dismiss (ECF 54).

## DEFENDANT'S MOTION FOR BILL OF PARTICULARS

Mr. Lund also moves for an order directing the government to file a bill of particulars to identify all acts and means used (including time, date, place, and persons present) upon which the government intends to rely at trial to prove the affirmative acts of evasion of payment of taxes as alleged in Count One of the indictment in Case '244 and all acts taken corruptly to obstruct and impede the IRS as alleged in Count Four of that indictment.

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Rule 7(f), however, provides that a district court "may direct the government to file a bill of particulars" and that the "defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." In Case '244, Mr. Lund was arraigned on July 10, 2019 (ECF 9) but waited almost two years before filing his motion for a bill of particulars, which he did on May 3, 2021 (ECF 55). Notwithstanding its untimeliness, the Court will consider Mr. Lund's motion on the merits.

The Ninth Circuit instructs that "[a] motion for a bill of particulars is appropriate where a defendant requires clarification in order to prepare a defense." *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1984). A bill of particulars serves three purposes:

> "[1] to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial, [2] to avoid or minimize the danger of surprise at the time of trial, and [3] to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague, and indefinite for such purposes."

*United States v. Ayers*, 924 F.2d 1468, 1483 (9th Cir. 1991) (alterations added) (quoting *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979)).

The purpose of a bill of particulars is not to obtain discovery, evidentiary detail of the government's case, or information regarding the government's legal theories. *See Wong Tai v. United States*, 273 U.S. 77 (1927). For example, a defendant's request "for the 'when, where, and how' of every act in furtherance of the conspiracy was the equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars." *Giese*, 597 F.2d at 1181. "In determining if a bill of particulars should be ordered in a specific case, a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." *Long*, 706 F.2d at 1054; *see Giese*, 597 F.2d at 1180 ("Full discovery also obviates the need for a bill of particulars."). A bill of particulars is not necessary if "the indictment itself provides sufficient details of the charges and if the government provides full discovery to the defense." *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984). "The decision whether to grant a request for a bill of particulars is directed to the trial court's discretion." *Long*, 706 F.2d at 1054.

Mr. Lund acknowledges that Counts One and Four include a plain, concise, and definite written statement of the essential facts constituting the offenses charged. ECF 56 at 3. He also

agrees that the "entities and activities" alleged in Counts One and Four are documented and described in the government's discovery materials. *Id*. Essentially, Mr. Lund argues that the breadth of the alleged time frame and production of substantial discovery materials support requiring the government to clarify the particulars of these two offenses. *Id*.

In response, the government acknowledges that its discovery materials total approximately 164,000 pages. ECF 57 at 8. This discovery includes records relating to each of the numerous nominee entities Mr. Lund used during the time period that he allegedly evaded his income taxes, the allegedly threatening letters Mr. Lund sent to the IRS, the lawsuits he filed allegedly to confound the IRS's collection and audit efforts, the records of 52 bank accounts that Mr. Lund allegedly controlled, and the allegedly false applications that Mr. Lund filed to receive public benefits. These discovery materials also include interview memoranda from every person whom the IRS interviewed during its criminal investigation, many of whom are expected to testify in the government's case-in-chief. *Id.*

As the government explains, it produced these discovery materials in four volumes, and each volume includes a detailed index. *Id*. at 8. Further, each index shows the beginning and ending Bates number of each document or item and the filename of each document or item. Further, the government's discovery materials also include the IRS Special Agent's Report (SAR) and two reports from the Oregon Department of Human Services. The SAR states in narrative form the government's theory of Mr. Lund's alleged tax evasion, alleged failure to file income tax returns, alleged obstruction of the IRS's collection and audit functions, and identifies almost every record or other item of evidence the government intends to use at trial. *Id*. at 8-9.

The government produced its most recent volume of discovery on October 2, 2020, seven months before Mr. Lund filed the pending motions. On October 19, 2020, Mr. Lund moved for a

continuance of the trial date so that he could be fully prepared for trial. ECF 44 (motion); ECF 46 (Decl. of Robert A. Lund). At the time, the Court had scheduled trial to begin on December 7, 2020. ECF 41. Mr. Lund requested a continuance of three months. On October 23, 2020, the Court held a conference, granted Mr. Lund's motion for continuance, and set a firm trial date of August 9, 2021 (in part due to COVID-19). ECF 48. At this conference, the Court also set a deadline of July 12, 2021 for both sides to file their trial exhibits and for the government to file a complete witness list. ECF 48 (Case Management and Scheduling Order); ECF 13 (Criminal Trial Management Order). On March 18, 2021, the Court held a status conference, during which Mr. Lund and his counsel confirmed that they saw no reason why they would not be fully prepared for trial on August 9, 2021. ECF 53. This conference occurred more than five months *after* the government's most recent production of discovery.

For all these reasons, the Court finds no need for a bill of particulars. Accordingly, the Court denies Defendant's motion for such a bill. ECF 55.

## CONCLUSION

The Court DENIES Defendant Robert A. Lund's Motion to Dismiss Count One (ECF 54 in Case '244). Similarly, the Court DENIES Defendant's Motion for Bill of Particulars relating to Counts One and Four (ECF 55 in Case '244).

**IT IS SO ORDERED**.

DATED this 7th day of June, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge
